IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:10cv163

IN RE: )
    SPEARMAN FOOD DISTRIBUTORS, INC., )
)
    **Debtor.** )
Chapter 11 Case No. 10-10409 )
)

## ORDER

**THIS MATTER** is before the Court on the Notice of Appeal of the United States Bankruptcy Administrator for the Western District of North Carolina [Doc. 1]. Appellant appeals from an Order of the Bankruptcy Court allowing the application of the Chapter 11 Debtor to retain attorney Trade Elkins. For the reasons set forth herein the appeal is dismissed.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**[1]

On April 14, 2010, Spearman Food Distributors, Inc. (Food) filed a Voluntary Petition pursuant to Chapter 11 of the United States Bankruptcy

---

[1]The citation to the record is limited to items included within the Appellant's Designation of Items to be Included in Record on Appeal. [Doc. 2]. The Appellee did not file a designation. In addition, judicial notice is taken of the dockets from the various Bankruptcy Court proceedings.

1

Code. [Bky. 10-10409, Doc. 1]. Food's attorney was H. Trade Elkins (Elkins). [Id., at 3]. The Petition was signed by Joe D.Spearman, Jr. (Jr.) as the President of Food. [Id.]. It was disclosed in the Petition that three other related bankruptcy cases were pending in the Western District of North Carolina: (1) a petition for Jr.; (2) a petition for Joe D. Spearman, Sr. (Sr.), Jr.'s father and the Vice-President of Food; and (3) a Petition for Spearman Furniture, Inc. (Furniture), a corporation wholly owned by Jr. and Sr.[2] [Id., at 3-4]. Carolina First Bank was identified as one of the primary creditors of Food, and its claim was secured by interests in three parcels of real estate: (1) Lot 12, Macedonia Lakes, a lake house, title to which was held by Sr.; (2) the furniture store, title to which was held by Sr.; and (3) the business location for Food, title to which was held by Jr. [Id., at 5; Bky. 10-10411; Bky. 10-10412]. Jr. owns 18% of the stock in Food while Sr. owns 82% of the company's stock. [Id.]. Food's facility is leased from Jr. who, as noted above, owns the real estate. [Id.]. At the same location, Jr. leases space to Asheville Packing, Inc. (Packing), another business which is solely owned by Jr. [Id., Doc. 15]. On June 7, 2010, Food, Jr. and Sr. filed a motion to allow the joint administration of the Chapter 11 proceedings for their Estates. [Id., Doc. 20].

---

[2]In re Joe Spearman, Jr., Bky. 10-10412; In re Joe Spearman, Sr., Bky. 10-10411; In re Spearman Furniture, Inc., Bky. 10-10410. Each of the individual petitions were Chapter 11 proceedings filed on the same date as the petition for Food. Furniture filed a petition pursuant to Chapter 7 on the same day.

2

Simultaneously, they filed an Application to Employ Attorney in which they each sought to employ Elkins as their attorney for the Chapter 11 proceedings. [Id., Doc. 18]. The Bankruptcy Administrator objected to the Application, arguing that pursuant to 11 U.S.C. §327(a), Elkins either held or represented interests which were adverse to the Estates. [Id., Doc. 24]. She also argued that pursuant to 11 U.S.C. §101(14), Elkins was not a disinterested person. [Id.]. As noted, Sr. owns the real estate at which Furniture does business and for which Furniture is obligated to Sr. as an unsecured creditor pursuant to a lease. [Id.]. In fact, in its bankruptcy petition, Furniture scheduled rent owed to Sr. in the amount of $158,600.00. [Id.]. As a result, the Administrator noted that "a conflict may arise between Elkins' duty to cooperate with [Furniture's] Trustee while representing [Sr.]." [Id.]. The Administrator also argued that the entangled ownership positions and debt load among Jr., Sr. and the entities rendered it impossible for Elkins to be a disinterested person representing interests which were not adverse to Food.

In support of the application for employment of Elkins, the Debtors pointed out that Sr. is the sole shareholder and owner of Furniture and that Jr. and Sr. are the only owners, officers and directors of Food. [Id., Doc. 26]. The three Chapter 11 proceedings were filed to preclude the foreclosure proceedings initiated by Carolina First Bank against the three parcels of real

3

estate referenced above which are owned by Jr. and Sr. and which had been used to collateralize a business loan to Food by the bank. [Id.]. The loan had also been personally guaranteed by Jr. and Sr. [Id.].

A hearing was conducted by the Hon. George R. Hodges, United States Bankruptcy Court Judge, on July 21, 2010 and the transcript thereof has been made part of the record on appeal. [Doc. 2]. At the hearing, Elkins argued to the Court that they had taken "great care at the outset, prior to filing [bankruptcy], to make sure that there was no pending controversy between [Food] and the two principals of that company, which are Spearman, Jr. and Sr." [Bky. 10-10409, Doc. 29, at 5]. Counsel for Carolina First Bank was present at the hearing and stated:

> [The bank has] been trying to foreclose these loans for a year[.] I think the practical solution is for them to stay in and have one attorney. This case can't support three different attorneys and, to the extent there might be some minor squabble between daddy and son, they are all on the hook to [the bank] for a lot of money, and we would just as soon see the case move ahead as economically as possible and as fast as possible.

[Id., at 4].

The Bankruptcy Court overruled the Administrator's objection and granted the application to employ Elkins as the attorney for Food. [Doc. 1-1]. In so doing, he made the following findings: (1) Elkins is a disinterested party and has no adverse interest to the estates which he seeks to represent; (2)

4

although Elkins "seeks to simultaneously act as attorney for all three estates, and represents a fourth related estate within the context of a Chapter 7 filing, the Court finds no present conflict;" (3) no creditor with the exception of the Bankruptcy Administrator objected to Elkins' simultaneous representation and, indeed, Carolina First Bank supported the application; (4) the collective financial goals of all three debtors are aligned, "such that a successful reorganization for one will yield a successful reorganization for all;" (5) there was no evidence that Elkins would be required to seek contribution or recovery from one estate against another; and (6) although two corporate debtors represented by Elkins owe money to the individual debtors, there is no active and operative conflict which renders Elkins' position untenable. [Id.]. From this ruling, the Bankruptcy Administrator timely appealed.[3] Fed. R. Bankr. P. 8002(a).

While the appeal has been pending, the various bankruptcy proceedings moved forward. On the motion of the Bankruptcy Administrator, Judge Hodges converted all three Chapter 11 proceedings to Chapter 7 on April 21, 2011. [Bky. 10-10409, Doc. 75; Bky. 10-10411, Doc. 74; Bky. 10-10412, Doc. 74]. In his determination that it was proper tp convert Food's Chapter 11 to

---

[3]The Court also orally ruled against the motion to consolidate the three Chapter 11 proceedings for administration but did not enter a written order.

5

Chapter 7, Judge Hodges noted that the proceedings for Jr. and Sr. had each been converted to Chapter 7 and held that "no conflict of interest exists with the appointment of the same Chapter 7 Trustee in [Food's] case and the related cases." [Bky. 10-10409, Doc. 75]. The Court also authorized the Bankruptcy Trustee, Langdon Cooper (Cooper), to operate Food's business. [Id.]. See 11 U.S.C. §721 ("The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate."). On May 3, 2011, the Court entered an Order consolidating the three cases for administration with Food's case being the lead case. [Id., Doc. 86]. No appeals were taken from these orders.

After the conversions and consolidation, the individual debtors made significant concessions to creditors. On June 1, 2011, Sr. surrendered the real estate at which Furniture operated to Carolina First Bank as well as Lot 12, Macedonia Lakes, the lake house. [Bky. 10-10411, Doc. 95]. On June 1, 2011, Jr. reaffirmed the debt owed to Carolina First Bank in connection with the business loan collateralized by the real estate at which Food operates. [Bky. 10-10412, Doc. 72]. Jr. advised that Food and Packing both operate out of the building located at 980 Upward Road and that each company pays $3,500.00 per month which was used to pay Carolina First Bank on the note.

6

[Id., Doc. 68]. When it became obvious that the Chapter 11 proceeding for Food was not functioning, Jr. made the payments himself. [Id.].

In Food's converted Chapter 7 case, the Bankruptcy Trustee moved pursuant to 11 U.S.C. §327 for leave to employ Elkins as his attorney "to represent the Trustee in the administration of the real property of these estates[.]" [Bky. 10-10409, Doc. 95]. The record does not disclose that the Bankruptcy Administrator objected to this motion, most likely because the conversion of all three cases to Chapter 7 rendered moot her previous objections. In granting the motion, the Bankruptcy Court held:

> Elkins has affirmed that to the best of his knowledge and belief [he] is a "disinterested person" as that term is defined in 11 U.S.C. Section 101(14), as he does not hold or represent an interest adverse to this bankruptcy estate or its creditors with respect to the limited assignment he would be undertaking concerning certain real estate. While he represents the Debtors generally in these cases, he can also simultaneously represent the Trustee and the estates in the investigation of titles and related real property matters, as the interests of the Debtors and the Trustee in the real property matters are aligned because the proceeds from the sale of any real property would as a practical matter fund the payment of claims in these bankruptcy estates.

[Id., Doc. 96, at 2].

Meanwhile, the Chapter 7 proceeding for Furniture moved apace with the Trustee's Final Report being filed on May 23, 2011. [Bky. 10-10410, Doc. 26]. On September 15, 2011, the Final Decree closing Furniture's Chapter 7 case was entered. [Id., Doc. 30].

7

## STANDARD OF REVIEW

The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the Bankruptcy Court may occur only where the findings are clearly erroneous. Educational Credit Management Corp. v. Frushour (In re Frushour), 433 F.3d 393, 398 (4th Cir. 2005). The conclusions of law of the Bankruptcy Court are reviewed de novo. Id.; Scholossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004). "Findings of fact are clearly erroneous when, although there is evidence to support [them], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." McGahren v. First Citizens Bank & Trust Co. (In re Weiss), 111 F.3d 1159, 1166 (4th Cir.), cert. denied, 522 U.S. 950, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997) (internal quotation and citation omitted).

## DISCUSSION

By Order entered in this matter on September 16, 2011, the Court required the Appellant to advise why this appeal did not become moot once the cases were converted to Chapter 7 and consolidated. [Doc. 9]. The Bankruptcy Administrator responded that "[d]eclaring this appeal moot or upholding the bankruptcy court's order approving Elkins' employment *would finalize the bankruptcy court's order*, thus clearing the way for Elkins to file an application for allowance of attorney fees and expenses incurred during his

representation of the Chapter 11 debtor in possession[.]" [Doc. 10 at 4-5] (emphasis added).

"The conversion of a petition from one chapter to another generally moots an appeal taken from an order in the original chapter." AmeriCredit Financial Services, Inc., 604 F.3d 753, 755 (2nd Cir. 2010) (internal quotation and citation omitted). "[C]onversion of a bankruptcy proceeding from one chapter of the Bankruptcy Code to another generally obviates the need to further litigate the issues in the original proceeding, thereby mooting an appeal from the original proceeding." Covington Capital Corporation v. Campbell (In re Campbell), 36 F.App'x. 388, 390 (10th Cir. 2002). After conversion, the debtor becomes entitled to relief under the chapter to which the proceeding has been converted, thus rendering moot an appeal since the factual predicates of the appeal are no longer relevant. J.B. Lovell Corporation v. Carlisle Corporation (In re J.B. Lovell Corp.), 876 F.2d 96, 98 (11th Cir. 1989) (citations omitted).

> Under ch. 11 of the Bankruptcy Code, a debtor-in-possession ("DIP") retains control of the bankruptcy estate, and must manage it for the benefit of the estate and the estate's creditors. A DIP occupies the same role as a bankruptcy trustee and is entitled to all the rights, power, and duties of a trustee. As trustee, a DIP may, with court approval, hire an attorney to assist in carrying out the statutory duties of a trustee. However, the attorney must not hold interests adverse to the estate and must be "disinterested."
> ...
> Conversely, under a ch. 7 petition for liquidation, the debtor does

9

> not retain possession or control of the estate, and does not assume the role of trustee. The ch. 7 debtor can also retain counsel, but is not subject to approval by the court, nor is the bankruptcy estate required to pay the ch. 7 debtor's attorney's fees.
>
> ...
>
> The Bankruptcy Code allows a ch. 11 [Bankruptcy Administrator to move] to ... convert [the] case to ch. 7. Lower federal courts have held that once conversion occurs, the original proceeding is terminated, *as are all pending appeals from the original case. [A]n appeal from a terminated ch. 11 case must be dismissed as moot when [the case is converted] to ch. 7*[.]

In re Howser v. United States Trustee, 2010 WL 610278 *2 (E.D. Wash. 2010) (emphasis added, citations omitted).

In other words, when the Bankruptcy Administrator moved to convert the cases to Chapter 7 proceedings, and the Bankruptcy Court granted such relief, then this Court no longer had the authority to grant any relief in the Chapter 11 proceedings. Those proceedings were concluded. Moreover, in the Chapter 7 proceedings the debtors no longer needed court approval before hiring an attorney, the issue at hand in the appeal. Id.; Roller v. Worthen National Bank of Northwest Arkansas (In re Roller), 999 F.2d 346 (8th Cir. 1993) (conversion of case to chapter 7 and failure to seek stay during appeal rendered appeal moot); In re Frank Meador Buick, Inc., 946 F.2d 885 (4th Cir. 1991) (noting in procedural history of case that previous appeal had been dismissed as moot upon conversion of case to chapter 7); Cook v. Fletcher (In re Cook), 730 F.2d 1324, 1326 (9th Cir. 1984) (conversion rendered appeal

10

moot; moreover, during the pendency of the appeal, appellant failed to seek stay in bankruptcy court and district court would not overturn the proceedings which continued therein). In fact, the Bankruptcy Administrator made an election of remedies by seeking conversion, an election "that obviates the need for further litigation of the issues unique" to the Chapter 11 cases. Lovell, 876 F.2d at 99.

> The pragmatic reasons for this rule of mootness should be obvious. Bankruptcy cases do not remain in stasis. Upon conversion to chapter 7, a chapter 7 trustee is appointed and becomes the new estate representative. ... The chapter 7 trustee conducts a new 11 U.S.C. §341 meeting, which, in turn, creates relatively short deadlines for objections to discharge and dischargeability and objections to exemptions. ... Assets may be liquidated or abandoned. ... If the [order in the Chapter 11 proceeding] were reversed, few, if any, of the [Chapter 7] events could be undone. Accordingly, the Conversion Order changed the case landscape. When the [Bankruptcy Administrator] failed to appeal that order and seek a stay of its effect, meaningful effective appellate review ... became impractical or impossible.

In re Sasso, 409 B.R. 251, 255 (1st Cir. BAP 2009) (citations omitted); Mac Panel Co. v. Virginia Panel Corp., 283 F.3d 622 (4th Cir. 2002) (discussing appeal in context of equitable mootness and finding appeal from bankruptcy court moot). The Court therefore finds this appeal moot.

In addition, the Court finds that the appeal was not properly taken in any event. Orders granting or denying the employment of counsel in bankruptcy cases are interlocutory. In re M.T.G., Inc., 403 F.3d 410, 413 (6th Cir. 2005);

11

In re S.S. Retail Stores Corporation, 162 F.3d 1230, 1232 (9th Cir. 1998); In re Continental Investment Corporation, 637 F.2d 1, 4 (1st Cir. 1980); Big Mac Marine, Inc. v. Jensen, 305 B.R. 309, 311 (D.Neb. 2004); Howser, 2010 WL 610278; In re RPC Corporation, 114 B.R. 116 (M.D.N.C. 1990). The Bankruptcy Administrator did not move for leave to appeal and this Court therefore has no jurisdiction. In re Harwell, 298 F. App'x. 733, 735 (10th Cir. 2008) (28 U.S.C. §158 establishes procedures for courts to review interlocutory appeals but they have not been invoked in this case); In re Smyth, 207 F.3d 758, 763 (5th Cir. 2000) (orders appointing counsel are interlocutory and leave of court to appeal not requested or provided). The Court, in its discretion, declines to consider the Notice of Appeal as a motion for leave to appeal in view of the fact that any such appeal is moot. Id.; Big Mac Marine, 304 B.R. at 311-12.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Appeal of the United States Bankruptcy Administrator for the Western District of North Carolina [Doc. 1] is hereby **DISMISSED**.

Signed: September 30, 2011

Martin Reidinger
United States District Judge